{¶ 12} While I agree that relator is not entitled to the requested writ of mandamus, I write separately to explain my reasons for denying the writ.
 {¶ 13} Relator contends that it has a clear legal right to relief because no evidence supports the commission's conclusion that respondent McGraw is incapable of sustained remunerative employment. Thus, relator's petition calls for inquiry into only one of the three disqualifying scenarios enunciated in Lawson; that is, physical ability to do sustained remunerative employment.
 {¶ 14} In its objections, relator argues that the SHO looked solely at evidence relevant to whether McGraw's activities at Stumptown Muzzleloading Supply showed that he was actually engaged in sustained remunerative employment, while ignoring other evidence showing that respondent's activities at his family-owned business demonstrate that he is capable of sustained remunerative employment. Relator maintains that the magistrate failed to address this claimed flaw in the SHO's analysis. *Page 5 
 {¶ 15} As the magistrate framed the issue, the petition presents a choice between characterizing McGraw's activities as a hobby and characterizing them as sustained remunerative employment. But relator argues that it presents the singular question whether McGraw's activities show a capability for sustained remunerative employment, regardless whether they are characterized as having been a hobby oractual remunerative employment. As the court in Lawson observed, "unpaid activity that is potentially remunerative can be considered for purposes of establishing a physical capacity for remunerative employment." (Emphasis added.) Id. at ¶ 19.
 {¶ 16} In response, McGraw argues that evidence of activities does not equate to evidence of a capacity for sustained remunerative employment. His point echoes that of the Lawson court when it emphasized that a PTD recipient's activities must never be viewed out of context. Id. at ¶ 24. It must be determined whether the activities are within or outside of the claimant's medical restrictions, and whether the evidence demonstrates, in the context of the claimant's circumstances, that the claimant could do the activity on a sustained basis.
 {¶ 17} In McGraw's view, the evidence demonstrates nothing more than his pursuit of a hobby and therapeutic activities within his physical limitations. That he can sit in his garage on a daily basis and talk, sharing his knowledge about firearms, does not mean that he is capable of sustained employment in another setting.
 {¶ 18} Relevant to the resolution of these arguments is the evidence as to precisely what McGraw does when he is present at Stumptown Muzzleloading Supply. What is not particularly relevant or helpful is evidence regarding whether McGraw draws a salary, how financially lucrative the business is, whether it is physically situated or *Page 6 
adequately advertised in order to promote business, whether the business pays taxes or whether it complies with federal firearm dealer licensing requirements.
 {¶ 19} The stipulated record demonstrates the following context for the activities under scrutiny. McGraw is 77 years old and sustained a work-related injury 30 years ago at the age of 46. (Stip. Rec. 098.) His claim has been allowed for acute lumbosacral strain, herniated nucleus pulposus, and low back laminectomy. Id. He received negligible benefits from numerous attempts at physical therapy. Id. at 134. He underwent surgery with a "very poor result." Id. at 133. In 1985, relator certified McGraw as being permanently and totally disabled. Id. at 180.
 {¶ 20} In March 1986, Dr. Phillips opined that McGraw is capable of self-employment in gun repair, but is incapable of any positions requiring prolonged standing, walking or lifting. Id. at 134. In January 1986, Dr. Phillips opined that, due to McGraw's severe post-laminectomy syndrome, uncontrollable left leg, and occasional bladder and bowel incontinence, even a sedentary job or structured classroom setting would be a problem. Rather, Dr. Phillips opined, a small home-based business or correspondence course, in which he could work at his own pace, would be appropriate. Id. at 133. According to Janis E. Reed, M.D., McGraw suffers from advanced glaucoma in both eyes and has been legally blind since July 1998. Id. at 138.
 {¶ 21} On two separate occasions in 2003 and 2004, agents observed McGraw answering questions about firearms, while in his wife's home-based firearms shop. McGraw represented to the agents that he was knowledgeable about a particular older-model pistol. He told the agents that he had been in the shop since 6:00 a.m. on one occasion and that he was essentially available anytime that they wished to return with *Page 7 
more questions. He sold pellets and other supplies to the agents and told them that he had recently sold three guns and had two orders for other guns. When the agents interviewed him, McGraw stated that he is at the shop every day.
 {¶ 22} McGraw has engaged in gunsmithing as a hobby for years; however, he said that he and his wife employ a gunsmith named Keith Phillips. Gary Parsons, who formerly co-owned the business, stated that when he was part owner of the business, it was he who performed the metalwork and McGraw just "tinkered around." McGraw and his wife told the agents that they do not keep regular business hours notwithstanding the fact that they post regular hours on a sign.
 {¶ 23} On this evidence, I agree with the magistrate's conclusion that this case is very much like State ex rel. Stettler v. Mid AtlanticCanners Assoc, Inc., Franklin App. No. 04AP-1290, 2005-Ohio-5646. InStettler, the claimant had been found to be permanently and totally disabled due to both medical and nonmedical factors. His physical restrictions rendered him capable of less than the full range of sedentary jobs. He had virtually lost the use of his left arm, and had impairments of his other arm and his left leg. He indulged a longtime interest in automobiles by going to a car dealership owned by his friend of 30 years, on a daily basis for four to five hours per day. He was not required or expected to do anything, but he would answer telephone inquiries when the dealership was busy, and placed telephone calls to other used car dealerships on behalf of the sales staff. Sometimes he did nothing but "hang out" when he was at the dealership.
 {¶ 24} After the commission terminated his PTD compensation and found fraud, this court granted a writ of mandamus. We found the claimant's activities to be occasional, and noted that the claimant was not necessarily doing any activities during *Page 8 
the full measure of time he spent at the dealership. We found no evidence to support the notion that the claimant was capable of sustained remunerative employment in a setting other than one where friends allowed him to come and go as he pleased, with no structured expectations or duties.
 {¶ 25} Like the claimant in Stettler, McGraw engages in activities that are habitual in the sense of occurring regularly, but there is insufficient evidence that, as relator argues, McGraw is capable of sustained remunerative activity within his physical restrictions in a setting other than his wife's unstructured, undemanding home-based business. Though he admitted that he is present at the shop every day, there is no evidence that McGraw is engaged in potentially remunerative activities during all of that time. Furthermore, the ability to work on a sustained basis cannot be inferred from McGraw's admissions or the other evidence, especially when viewed in the context of his overall physical condition.
 {¶ 26} This case is also similar to that of State ex rel. Bentley v.Indus. Comm., Franklin App. No. 05AP-336, 2005-Ohio-6755. In 2002, the claimant in that case was determined to be permanently and totally disabled because his physical restrictions rendered his residual functional capacity below the sedentary level. It was later determined that he had been working as a van driver for a local school district from July through December 2002. He worked for 30 minutes before school and 30 minutes after school each school day. His activities did not exceed his physical restrictions. The magistrate concluded, and this court agreed, that there was insufficient evidence to conclude that the claimant was physically capable of sustained remunerative employment. Like the claimant in Bentley, there is no evidence that McGraw's activities *Page 9 
were inconsistent with his physical restrictions, or that he could perform these activities on a sustained basis.
 {¶ 27} This case is unlike the case of State ex rel. Campbell v.Indus. Comm., Franklin App. No. 02AP-1253, 2003-Ohio-4824, in which the evidence included surveillance conducted from June 2000 through October 2001 showing the claimant repairing cars, witness testimony that the claimant worked on cars daily from 11:00 a.m. to 5:30 p.m., testimony of several customers and an employee, and automotive-parts suppliers' records demonstrating over $17,000 in parts purchases over a three and one-half year period. There we concluded that the claimant was not merely engaging in a therapeutic activity or hobby to "relieve stress" as the claimant had urged, but that the evidence clearly demonstrated the ability to engage in sustained remunerative employment.
 {¶ 28} This case is also unlike State ex rel. Collins v. Indus.Comm., Franklin App. No. 04AP-31, 2004-Ohio-7201 (decided shortly afterLawson), in which the record contained evidence that the claimant had been conducting a home-based childcare business. The record in that case included surveillance from August 1998 through November 1999 showing cars dropping children off in the morning and picking them up in the afternoon, bank records showing over $18,600 in cash deposits over a two-year period, and testimony from customers stating that the claimant had cared for their children or grandchildren on a regular basis.
 {¶ 29} In the present case, the stipulated evidence does not show that McGraw is capable of sustained remunerative employment. It does not show that the activities in which he engaged were done on a sustained basis. It does not show that he is capable, *Page 10 
on a sustained basis, of doing the activities that the agents observed, anywhere but in his home environment. Moreover, he is legally blind and, according to his treating physician, must be able to work at his own pace. When viewed in this context, it is even more clear that McGraw's activities at Stumptown Muzzleloading Supply do not demonstrate the capacity for sustained remunerative employment. Thus, the record supports the commission's decision and does not demonstrate that relator has a clear legal right to the relief that it seeks. Accordingly, for the foregoing reasons, I concur in the judgment. *Page 11 
 APPENDIX A MAGISTRATE'S DECISION Rendered on March 13, 2007 IN MANDAMUS {¶ 30} Relator, ATT, Inc., has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's motion seeking to terminate the permanent total disability ("PTD") compensation paid to respondent David McGraw *Page 12 
("claimant"). Relator argues that the commission should be ordered to terminate claimant's PTD compensation, to declare an overpayment, and to find that claimant engaged in fraud.
Findings of Fact: {¶ 31} 1. Claimant sustained a work-related injury on March 19, 1977, and his claim has been allowed for "sprain lumbosacral; herniated nucleus pulposus at L4-5," and "low back laminectomy."
 {¶ 32} 2. In July 1985, relator and claimant entered into an agreement to resolve a case which was pending in federal court. By the terms of the agreement, relator agreed to pay claimant PTD compensation and claimant agreed to enroll and participate in a rehabilitation program administered by the commission.
 {¶ 33} 3. The agreed application was submitted to the commission and, by order dated February 26, 1986, claimant was awarded PTD compensation.
 {¶ 34} 4. Claimant did begin a rehabilitation program and, after the initial evaluation, it was determined that claimant's rehabilitation efforts should be focused on helping him set up his own small business focused on gun repair and sales. Evidence in the record establishes that claimant and his wife had owned their own gunsmithing business in the 1960s. Claimant had a reputation in the area as a gunsmith and he had continued with gunsmithing as a hobby while he was working for relator.
 {¶ 35} 5. A plan was submitted to the commission in early February 1986; however, the rehabilitation division reviewed the plan and decided not to approve the proposal. After that decision, no further efforts were undertaken to provide rehabilitation services to claimant and he remained on PTD compensation. *Page 13 
 {¶ 36} 6. Sometime in 2003, the Ohio Bureau of Workers' Compensation ("BWC") was informed that claimant was working while receiving PTD compensation. An investigation revealed the following:
 {¶ 37} (a) Claimant's wife was the sole proprietor of Stumptown Muzzleloading Supply. The business was established in 1996, at which time there were two other partners. Claimant's nickname was noted on the sign. Claimant would later indicate that his name was on the sign because he had been involved in gunsmithing as a hobby for years and people recognized his name. The business was run out of claimant's garage.
 {¶ 38} (b) In December 2003, special agents Bunting and Recinella conducted an undercover investigation at Stumptown Muzzleloading Supply. Claimant's wife was behind the counter and when the agents inquired about a specific conversion kit she called for claimant to answer the question. The agents engaged claimant and his wife in conversation. They learned that claimant had recently given his last two conversion kits to another gunsmith dealer and, after asking questions regarding a specific older model pistol, claimant told them they could bring the pistol in and he would look at it. The agents explained another problem with an older shotgun and, after informing claimant that they had lost a part for the shotgun, claimant informed them that if he did not have a replacement he could make one in the machine shop. Lastly, when the agents indicated that they might bring a certain gun in for claimant to examine, claimant answered that he had been in the shop since 6 a.m. on Sunday, so the agents could essentially come back anytime. Before they left, the agents purchased pellets from claimant for a price of $9.62 including tax. *Page 14 
 {¶ 39} (c) In April 2004, the agents returned to the shop and engaged claimant in further conversation. Claimant informed them that he had recently sold three guns and had a couple of orders for others; explained the various models of a particular brand of pistol; used an intercom system to reach his wife at the residence to ask her when the next Concealed Carry Class would be held; and, before leaving, claimant sold the agents $4.19 including tax worth of items to clean a shotgun.
 {¶ 40} (d) A review of bank records revealed that claimant's wife is the sole owner of the account for Stumptown Muzzleloading Supply.
 {¶ 41} (e) In June 2004, Bunting and special agent Mason returned to the shop. A sign on the door stated "be back at 11:00 A.M." Claimant and his wife arrived shortly after 11 a.m., and the agents interviewed them at their residence. The interview revealed the following: Claimant admitted that he was at the shop every day; has been involved in gunsmithing as a hobby for years; in 1996, his wife and two partners opened the business; the partnership was dissolved five years later and his wife became the sole owner; his name is on the sign because people know of his longtime involvement in gunsmithing; and, that they employ a gunsmith named Keith Phillips.
 {¶ 42} (f) Claimant and his wife were again interviewed in September 2005. During that interview, the following additional evidence was obtained: the names of the original two other partners were given to the agents; the partnership had dissolved because it was too far for one of the partners, Gary Parsons, to drive, and the other partner, Alan Shephard, was in bad health; Parsons originally ran the machine shop and actually owned most of the equipment in the machine shop. Thereafter, claimant's wife indicated that they had spoken to an attorney so the interview was terminated. *Page 15 
 {¶ 43} (g) Parsons was interviewed in January 2006 and he confirmed the facts the agents had been told previously. Parsons added that claimant essentially "tinkered around" in the shop, and that he, Parsons, did the majority of the work building any muzzleloaders. Parsons refused to answer any additional questions.
 {¶ 44} (h) Banking records showed numerous large deposits into claimant's personal checking account; a lack of any transfers from the business account to the personal account; and no checks were written from the business account to claimant. The agents contacted the Ohio Bureau of Alcohol, Tobacco and Firearms ("ATF") and learned that claimant was listed as a "responsible person" at Stumptown Muzzleloading Supply. According to ATF regulations, a "responsible person" is defined as follows:
 * * * "An individual who has the power to direct the management and policies of the applicant pertaining to the explosive materials. For example, responsible persons generally include sole proprietors and explosive facility site managers. In the case of a corporation, association, or similar organization, responsible persons generally include corporate directors and officers, as well as stockholders who have the power to direct management and policies."
 {¶ 45} 7. In February 2006, relator filed a motion to terminate claimant's PTD compensation, and asked that the commission declare an overpayment and make a finding of fraud.
 {¶ 46} 8. The matter was heard before a staff hearing officer ("SHO") on April 4, 2006, and resulted in an order denying relator's request to terminate claimant's PTD compensation. Additional evidence was presented, through testimony, at the hearing. Specifically, Bunting testified that Stumptown Muzzleloading Supply was not listed in the business pages of the telephone book; that, aside from the sign at the entrance to the claimant's property, there was no other advertising of the business; there was no *Page 16 
evidence to indicate that the business was involved in any promotional activities at gun shows; and there was no evidence that claimant was engaged in any type of physical activity other than standing and talking. Claimant's wife testified that the business was located in a remote area which was not easily accessible; the sign on the door indicating the hours of operation was there in order to satisfy federal firearms license requirements; and while the business did file tax returns, the business did not have much in net earnings. No evidence of actual bank statements or tax returns was submitted by the BWC as part of the investigation.
 {¶ 47} 9. In determining that relator's motion should be denied, the SHO cited the medical records of Richard B. Phillips, M.D., who indicated that claimant was unable to do any type of lifting or prolonged standing, sitting or walking, and that he would have difficulties with a sedentary job. The SHO found that claimant's activities at Stumptown Muzzleloading Supply did not exceed his physical restrictions. Further, the SHO found that the gunsmithing and firearms training were actually performed by other people, and not by claimant. The SHO also noted that there was no evidence that claimant received any remuneration for his work. The SHO concluded:
 The Staff Hearing Officer finds most persuasive State ex rel. Lawson v. Mondie Forge, 104 Ohio St. 3d 39, 2004-Ohio-6086, which was decided after the three cases cited by Self-Insured Employer (i.e. [State ex rel. Jerdo v. Pride Cast Metals, Inc., 95 Ohio St.3d 18, 2002-Ohio-1491; State ex rel. Schultz v. Indus. Comm., 96 Ohio St.3d 27, 2002-Ohio-3316; State ex rel. Kirby v. Indus. Comm., 97 Ohio St.3d 427, 20020-Ohio-6668]), and which specifically discusses the latter two. In Lawson the court had hard evidence of 207 separate specific observed or video-taped instances of activity over a 9 year period (thus a simplified ration [sic] of two per month), none of which the court found to clearly exceed Lawson's physical restrictions, were insufficient *Page 17 
evidence of his ability to engage in sustained remunerative employment. (Lawson performed these for the Village of West Elkton, from whom he received a salary of $200.00 to $300.00 per year, plus a bonus of $6.00 per hour for snow-plowing). In the instant case, the "hard evidence" (i.e. the two direct observations of 12/19/2003 and 04/13/2004) is only 1/8 such frequency, and there is no evidence of any remuneration of claimant's acts in the business.
 The Staff Hearing Officer therefore finds claimant's assertion that he was merely keeping busy with permitted sedentary activity relating to a hobby he has had for over 50 years, and finds that claimant was not engaged in nor capable of sustained remunerative employment from 05/02/1997 to date.
(Emphasis sic.)
 {¶ 48} 10. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law: {¶ 49} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond FoundryCo. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165. *Page 18 
 {¶ 50} The parties all agree that the decision of the Supreme Court of Ohio in State ex rel. Lawson v. Mondie Forge, 104 Ohio St.3d 39,2004-Ohio-6086, is controlling here. Relator argues that the commission misinterpreted Lawson and, in reality, failed to follow the law therein enunciated. On the other hand, the commission and claimant both contend that the commission properly applied the law enunciated inLawson to the facts of the present case. For the reasons that follow, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion.
 {¶ 51} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State exrel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v.Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203.
 {¶ 52} In Lawson, the claimant had worked doing heavy labor for most of his working career. At the same time, Lawson had been a counsel member for the Village of West Elkton, Ohio.
 {¶ 53} Lawson sustained a work-related injury in 1985 and was awarded PTD compensation effective in 1994 after the commission concluded that the low stress *Page 19 
sedentary jobs to which Lawson was limited were foreclosed to anyone with his lack of skills and education.
 {¶ 54} In 2001, the BWC reopened Lawson's case and began an investigation. The following relevant evidence was noted by the court:
 The most extensive documentation was an "activity spreadsheet" that contained 207 activities engaged in by the claimant from 1993 through 2001, almost all allegedly for the benefit of the village. The predominant activity listed was refuse disposal, which will be explained more fully below. Each year, claimant also put up flags in village streets for July 4th, Labor Day, and Memorial Day. Other miscellaneous activities included plowing snow, purchasing hardware and gas, unspecified truck and plow maintenance, and hauling gravel. The parties agree that claimant did almost all of this work for free, receiving from the village a salary of at most $200 to $300 per year for his council activities plus a bonus amounting to $6 per hour for plowing.
 The second piece of evidence was a surveillance videotape and accompanying surveillance log. According to the log, the tape covered a total of about five and a half hours over two consecutive Saturdays during the annual village clean-up. Most of the documented activity involved driving a dump truck and loading unspecified items into the truck. Log entries stated that claimant had helped load a couch and a lawn mower onto the truck's bed. Another stated that claimant "kicked and broke apart a table." He allegedly hoisted a chair of unknown description and weight, but left the lifting of an appliance to others. Again, remuneration, if any, was part of the minimal compensation mentioned earlier.
 The final piece of evidence consisted of affidavits from three village residents, including the mayor and police chief. Much of their testimony repeated that of the spreadsheet. There was also evidence that claimant occasionally did some lawn mowing with both a push and riding mower.
Id. at ¶ 4-6. (Fn. omitted.) *Page 20 
 {¶ 55} The surveillance evidence was given to a doctor who concluded that Lawson's activities far exceeded the restrictions of activity which were the grounds for granting him PTD compensation. The matter was heard before an SHO who concluded that Lawson's activities were sporadic, he had not engaged in sustained remunerative employment, and he did not commit fraud.
 {¶ 56} The BWC requested reconsideration and, ultimately, the commission determined that Lawson had been engaged in physical activity which demonstrated that he was capable of performing sustained remunerative employment. The commission concluded that the evidence established a regular pattern of work activity, some of which was physical activity well in excess of the sedentary restrictions. The commission also made a finding of fraud.
 {¶ 57} Lawson filed a mandamus action in this court and the writ was denied. Thereafter, Lawson pursued the matter and, ultimately, the Supreme Court of Ohio granted his request.
 {¶ 58} In Lawson, the court reiterated that permanent total disability pivots on a single question: Is the claimant capable of sustained remunerative employment? To that end, the court stated that PTD compensation is inappropriate where there is evidence of: (1) actual sustained remunerative employment; (2) the physical ability to do sustained remunerative employment; or (3) activities so inconsistent with the disability evidence that they impeach the medical evidence underlying the award. Id. at ¶ 16.
 {¶ 59} Thereafter, the court noted that "[n]either `sustained' nor `work' has been conclusively defined for workers' compensation purposes. As to the latter, clearly, labor exchanged for pay is work. * * * [A]lso[,] * * * unpaid activity that is potentially *Page 21 
remunerative can be considered for purposes of establishing a physical capacity for remunerative employment. This principle, however, should always be thoughtfully approached, particularly when PTD is at issue." Id. at ¶ 19.
 {¶ 60} Ultimately, upon reviewing the evidence, the Lawson court determined that the predominant activity, driving a truck, was within his sedentary limitations while only a few activities could be said to exceed his medical limitations. The court concluded that the evidence of Lawson's other activities failed to demonstrate work beyond the sedentary level. Further, the court determined that the evidence did not establish Lawson's ability to perform any of those tasks on a sustained basis. Instead, the court found that it was irregular activity.
 {¶ 61} In the present case, relator argues that the commission incorrectly read Lawson to require that there be evidence that claimant was actually employed. Further, relator contends that the commission did not consider the second two factors listed in Lawson: claimant's physical ability to perform sustained remunerative employment or claimant's involvement in activities inconsistent with his medical restrictions.
 {¶ 62} The final paragraph of the commission's order was noted in the findings of fact. In the final sentence, the SHO stated as follows:
 The Staff Hearing Officer therefore finds claimant's assertion that he was merely keeping busy with permitted sedentary activity relating to a hobby he has had for over 50 years, and finds that claimant was not engaged in nor capable of sustained remunerative employment from 05/02/1997 to date.
 {¶ 63} (Emphasis sic.) Upon review, it is clear that the commission did address all three criterion. Specifically, the SHO concluded that claimant was not engaged in actual sustained remunerative employment and that the evidence presented did not *Page 22 
demonstrate that claimant had the physical ability to perform sustained remunerative employment. The magistrate finds that the SHO's reference to a hobby is not synonymous with relator's argument that the SHO incorrectly read Lawson to require that there be evidence that claimant was actually employed. Furthermore, with regard to the third criterion, the only medical evidence in the record indicated that the activities claimant was performing were not outside of his medical restrictions. The SHO relied upon that medical evidence and, as such, any failure to reiterate that finding at the end of the order is not fatal.
 {¶ 64} Upon review of the entire record and the commission's order, the magistrate finds that the commission did not abuse its discretion in finding that the evidence did not establish that claimant was performing actual sustained remunerative employment nor that he had the physical ability to perform sustained remunerative employment, nor that his activities were inconsistent with his medical restrictions.
 {¶ 65} In State ex rel. Stettler v. Indus. Comm., Franklin App. No. 04AP-1290, 2005-Ohio-5646, this court issued a writ of mandamus ordering the commission to vacate its order terminating the PTD compensation of Douglas Stettler. In Stettler, there was evidence that Stettler was at a car dealership five days a week for approximately four and one-half hours per day. Stettler took messages, acted as a go-between with other dealerships, and was permitted to drive a vehicle.
 {¶ 66} A magistrate of this court considered the evidence and stated:
 In the magistrate's view, answering the telephone and acting as the so-called "go between" with Mr. Fink and the other dealers calling in their prices for automobiles can be viewed as work. Also, that relator was allowed to drive a Fink's Used Cars vehicle for his personal use can be viewed as *Page 23 
remuneration. However, that relator engaged in some degree of work for remuneration does not automatically satisfy the standard for terminating PTD compensation. [State ex rel. Ford Motor Co. v. Indus. Comm., 98 Ohio St.3d 20, 2002-Ohio-7038]; Lawson, supra.
 {¶ 67} Id. at ¶ 45. Viewing the evidence in a light most favorable to the commission, the magistrate concluded that it was clear that the evidence fell short of constituting some evidence supporting a determination that Stettler was engaged in sustained remunerative employment during his receipt of PTD compensation. Further, the magistrate noted that there was no evidence and no claim that Stettler's activities were physically inconsistent with the physical restrictions associated with his industrial injury. The court adopted the magistrate's decision as its own, concluded that the commission had abused its discretion by terminating Stettler's PTD compensation, and granted a writ of mandamus ordering the commission to reinstate Stettler's PTD compensation.
 {¶ 68} After considering all the evidence in the record, relevant case law, and relator's arguments, the magistrate concludes that relator has not demonstrated that the commission abused it discretion in denying relator's motion seeking to terminate claimant's PTD award, and further that the commission did apply the correct standard and made the requisite findings. As such, this court should deny relator's request for a writ of mandamus. *Page 1